**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

ISAAC SHANNON,

                Plaintiff,

v.

J. GOON, Nurse, Auburn Correctional Facility,

                Defendants.

No. 12-CV-395
(GLS/CFH)

---

**APPEARANCES:**

ISAAC SHANNON
Plaintiff Pro Se
07-A-6666
Wende Correctional Facility
Post Office Box 1187
Alden, New York 14004

HON. ERIC T. SCHNEIDERMAN
Attorney General for the
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**OF COUNSEL:**

DOUGLAS J. GOGLIA, ESQ.
Assistant Attorney General

**CHRISTIAN F, HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Issac Shannon ("Shannon"), an inmate in the custody of the New York State Department of Correctional and Community Services ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant, a DOCCS nurse, violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

is defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Dkt. No. 18. Shannon opposes the motion. Dkt. No. 29. For the following reasons it is recommended that defendant's motion for judgment on the pleadings be granted.

**I. Background**

The facts are related herein in the light most favorable to Shannon as the non-moving party. See subsection II(A) infra.

From the age of twelve, Shannon suffered from progressively worsening episodes, beginning with falling sensations and a loss of consciousness to full-blown tonic-clonic seizures[2]. Dkt. No. 1 at 7. The frequency of Shannon's seizures have increased since his incarceration in 2007, with Shannon reportedly experiencing two to three episodes a month during the first part of 2011 and one episode a week during March of 2011. Dkt. No. 1 at 7.

On July 2, 2011, Shannon was brought to the infirmary after suffering a seizure while he was in the yard during recreation. Compl. at 4. Shannon's seizure lasted approximately thirty minutes prior to medical personnel providing him with Versed, an anticonvulsant medication which resulted in his seizure subsiding. Id. at 4-5; Dkt. No. 1 at 7. However, after the administration of the drug, Shannon ceased breathing and cardiopulmonary resuscitation ("CPR") was commenced by one of the corrections officers. Compl. at 4-5; Dkt. No. 1 at 7. CPR was performed for approximately one minute, after which time Shannon was successfully resuscitated. Dkt. No. 1 at 7. Emergency medical services were called and Shannon was taken to Auburn Memorial Hospital, and later Upstate Hospital, for

---

[2] Tonic clonic seizures "consist[] of a convulsive twitching of the muscles." DORLAND'S ILLUSTRATED MED. DICTIONARY 1719 (28th ed. 1994) [hereinafter "DORLAND'S"].

2

further evaluation. Id.; Compl. at 4.

Shannon states that medical personnel at Auburn Memorial told him he had been "intoxicated with barbiturates [sic]." Compl. at 4, 5. Shannon also contends that he suffered physical damage and "couldn't really move around," although he fails to specify of what those damages consisted. Compl. at 5. Shannon also states that physical therapy was recommended by the hospital but, as of July 30, 2011, he had not yet received any therapy at the facility. Id.

## II. Discussion

Shannon contends that his Eighth Amendment rights were violated when defendant Goon provided him with medication which caused a cardiac arrest and almost killed him. Defendant argues for dismissal because (1) she was not personally involved in the provision of the medication; (2) Shannon's constitutional claims are meritless; and (3) Goon is entitled to qualified immunity.

### 1. Legal Standard[3]

"The standard for granting a Rule 12(c) motion . . . is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted). Rule 12(b)(6) authorizes dismissal of a

---

[3] Generally, consideration of a motion for judgment on the pleadings "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). As Shannon attached the emergency room report generated by Upstate on July 2, 2011 to the complaint, it too has been considered.

3

complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

4

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).

### B. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

5

> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

In Shannon's complaint, he fails to specifically allege that defendant nurse Goon was the individual responsible for administering the Versed. Instead, Shannon emphatically provided a confusing statement that the medication "had to come from the J. Goon in her co-workers . . . ." Compl. at 4. Such allegations are fairly inconclusive in establishing whether it was Goon or her co-workers who directly provided the medication. Moreover, there is nothing in the record to indicate that Goon had supervisory authority over anyone or could direct anyone to provide any type of medical care. To the extent that Shannon attempts to allege personal involvement based upon Goon's title or position in a hierarchal chain of command alone, such allegations are insufficient. Wright, 21 F.3d at 501.

In Shannon's response, he stated than an unidentified corrections officer told him that he, the corrections officer, "heard [that] it was Nurse J. Good that gave [Shannon] something [a]n[d] then [he] went flatline . . . ." Dkt. No. 29-1 at 7. While the Supreme Court has held that a "nonmoving party [is not required to] produce evidence in a form that would be admissible at trial in order to avoid summary judgment," this statement, even construing it in the light most favorable to the plaintiff, fails to indicate a plausible claim of personal involvement as it relies upon an unnamed, unsubstantiated, third party and multiple hearsay statements. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Accordingly, defendant's motion on that ground is granted.

6

## C. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and

7

disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

In this case, defendant does not challenge that Shannon's seizure constituted a serious medical need. Without deciding that issue, based on the medical evidence submitted, it is clear that, assuming she was personally involved, defendant nurse Goon was not deliberately indifferent to Shannon's medical needs. First, the record belies any allegations of Goon failing to treat Shannon. Shannon began having a seizure in the recreation yard and arrived at the infirmary, still seizing, for a total duration of approximately thirty minutes. In response to the prolonged seizure, Shannon was provided with anticonvulsant medication. Shannon does not dispute that the medication he received was for the treatment of seizures. Instead, in Shannon's response, he repeatedly states that this medication had not previously been provided to him and that, instead, he had received different medications to control his condition. Dkt. No. 29-1 at 1-2, 5. The fact that Shannon had not previously been given Versed and would have instead preferred a different form of treatment results in nothing more than a disagreement over medication. Such disagreements are insufficient to establish an Eighth Amendment claim. Sonds, 151 F. Supp. 2d at 312.

8

Second, even construing the record in the light most favorable to Shannon, it is still devoid of any facts sufficient to raise a question of material fact with respect to the subjective prong of the analysis. Shannon stated that Goon "thought . . . [the medication] would help (wrong) . . . ." Dkt. No. 29-1 at 3; see also Id. at 7 ([Goon] fail[ed] . . . after [Shannon] receive[d] that Versed dose [because he] went into cardiac arrest [and] flatline when [he] came to get help for [the] seizure not to make it wors[e]."). Thus, Shannon does not dispute that he was provided with treatment. Instead, Shannon contends that the medication he received was dangerous because it, presumably, precipitated the subsequent cardiac arrest and resulted in an emergency situation. At best, it appears that Shannon has established that Goon was negligent in her provision of the Versed as opposed to one of the other drugs which he had previously been treated with and from which he had not suffered any reaction. Such contentions are insufficient to establish a constitutional claim. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The record belies any claims of deliberate indifference. By Shannon's own admissions, he was immediately medicated. Additionally, Shannon stated that he was never prescribed Versed before, thus, there was no way for anyone to know how drastically the provision of the medication was going to affect him. Moreover, when Shannon elapsed into cardiac arrest, he was immediately given CPR and the emergency medical squad was summoned to the infirmary. Such actions mitigate against any claims of an intentional denial or delay of medical treatment.

Third, to the extent that Shannon contends his Eighth Amendment rights were denied by the failure to provide physical therapy, such claims are also meritless. First, it is unclear

why physical therapy would be indicated; how Goon, as a nurse, was responsible for its provision; or that an inordinate amount of time had elapsed as Shannon's response was filed less than a month after the seizure occurred. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves. The essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks and citations omitted).

Fourth, to the extent that Shannon contends in his response that Goon should have waited to intervene to see if the seizure would resolve itself, such claims are also meritless. With respect to the argument that treatment could have been delayed, it appears that Shannon is advocating for an alternative treatment, in that no intervention should have been provided. Advocating a medical professional to stand idly by and see if an emergency medical condition resolves itself is counterintuitive because represents a plausible argument for deliberate indifference. To the extent that this protocol is an accepted medical procedure, Shannon's proffers that this would have generated a more favorable result is nothing more than a difference in opinion. Such differences in opinions do not support an Eighth Amendment allegation. Sonds, 151 F. Supp. 2d at 312. Therefore, the record clearly establishes that the medical treatment Shannon received complied with constitutional guarantees as it was appropriate, timely, and eliminates any plausible allegations that defendants were deliberately indifferent. While Shannon suffered from an unfortunate event in response to the provision of a medication which, no one, including Shannon or the defendant, knew would result in such an immediate deterioration in Shannon's health, represented at best negligence and at worst a terrible and unfortunate

10

accident. Either way, both of those scenarios are still insufficient to establish an Eighth Amendment claim. Estelle, 429 U.S. at 106

Accordingly, defendants' motion for judgment on the pleadings should be granted on this ground.

### E. Qualified Immunity

Defendant claims that even if Shannon's constitutional claims are substantiated, she is entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed supra, it has not been shown that defendant violated Shannon's constitutional rights.

Therefore, it is recommended in the alternative that defendants' motion on this ground be granted.

## IV. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion for judgment on the pleadings (Dkt. Nos. 18) be **GRANTED** and that judgment be entered for all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: November 9, 2012
       Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge